IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LATORRENCE NEWMAN | § | |
| (TDCJ No. 02030330), | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:16-cv-3445-N-BN |
| | § | |
| LORIE DAVIS, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner LaTorrence Newman, a Texas inmate, has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. This resulting action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey. The State filed a response opposing relief. *See* Dkt. No. 11. And Newman has filed a reply brief. *See* Dkt. No. 17. For the reasons explained below, the Court should deny Newman's habeas petition.

**Applicable Background**

Newman pleaded guilty to burglary of a habitation and true to an enhancement paragraph. *See State v. Newman*, No. F15-51521-S (282d Jud. Dist. Ct., Dallas Cty., Tex.). A jury fixed his punishment at forty-five years' imprisonment. *Id*.

Because Newman's notice of appeal was untimely, his direct appeal was

dismissed for lack of jurisdiction. *See Newman v. State*, No. 05-15-01541, 2016 WL 310077, at *1 (Tex. App. – Dallas June 16, 2014, pet ref'd). And the Texas Court of Criminal Appeals (the "CCA") refused Newman's petition for discretionary review. *See Newman v. State*,PD-0146-16 (Tex. Crim. App. May 25, 2016).

Newman filed a state application for a writ of habeas corpus. The CCA denied it without a written order on the trial court's findings without a hearing. *See Ex parte Newman*, WR-85,559-01 (Tex. Crim. App. Aug. 24, 2016).

Newman now seeks federal habeas relief. Broadly, Newman claims that he was coerced into entering an involuntary plea, received ineffective assistance of counsel at the plea stage and at sentencing, the trial judge acted improperly, as did the prosecutors, and his criminal proceedings violated his rights to due process.

## Legal Standards

Where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court adjudication on direct appeal is due the same deference under Section 2254(d) as an adjudication in a state post-conviction proceeding. *See, e.g.*, *Dowthitt v. Johnson*, 230 F.3d 733, 756-57 (5th Cir. 2000) (a finding made by the CCA

on direct appeal was an "issue ... adjudicated on the merits in state proceedings," to be "examine[d] ... with the deference demanded by [the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA")]" under "28 U.S.C. § 2254(d)").

A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. ___, 135 S. Ct. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the AEDPA prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under §

2254(d), a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682 F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s]

-5-

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Richter*, 562 U.S. at 98 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."); *Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *cf. Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court."

*Evans*, 875 F.3d at 217.

## Analysis

I.    <u>Challenges to the Guilty Plea</u>

Newman claims that his plea proceedings violated his rights to due process. *See* Dkt. No. 3 at 7. Specifically, he asserts that his family coerced him into pleading guilty; he pleaded guilty on the understanding that he would serve five years in prison; and he was under the influence of seven or eight medications when he entered his plea. *See id.*

A guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

The United States Court of Appeals for the Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) the defendant's full understanding of the charges; and (3) the defendant's realistic appreciation of the consequences of the plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). These core concerns are addressed by the admonishments contained in article 26.13 of the Texas Code of Criminal Procedure. *See, e.g.*, *Ojena v. Thaler*, No. 3:10-cv-

2601-P-BD, 2011 WL 4048514, at *1 & n.1 (N.D. Tex. Aug. 25, 2011), *rec. adopted*, 2011 WL 4056162 (N.D. Tex. Sept. 12, 2011). "Nonetheless, the issue of whether the state trial court followed the statute is nondispositive. Instead, a guilty plea will be upheld on habeas review if it is entered into knowingly, voluntarily and intelligently." *Dominguez v. Director, TDCJ-CID*, No. 6:14cv49, 2014 WL 2880492, at *3 (E.D. Tex. June 23, 2014) (citing *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000); *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)).

Newman's claim – that he agreed to plead guilty only because he was told that he would receive a stipulated sentence of five years in prison – is belied by the record of his plea proceedings. During his plea proceedings, Newman acknowledged that he was reluctant to accept the State's "offer when [his lawyer] came out and told me about the 5 to 99." *See* Dkt. No. 11-1 at 39. And, during the plea colloquy, the trial court admonished him that he faced a possible sentence of "5 to 99 or life and a fine not to exceed $10,000." *Id.* at 52. Newman acknowledged that he understood that sentencing range, and then he chose to plead guilty. *See id.* In addition, Newman signed plea paperwork that advised him – consistent with the court's explanation – that he faced up to 99 years' imprisonment under the plea agreement. *See* Dkt. No. 11-1 at 32, 34.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "Thus, a defendant ordinarily may not refute his sworn testimony at a plea hearing while under oath." *United States v. Soliz*, 359 F. App'x 466, 470 (5th Cir. 2009). In addition to sworn testimony, official documents – such as Newman's written plea agreement, in which he acknowledged the

-8-

potential penalties – are "entitled to a presumption of regularity and are accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).

Newman has offered no evidence to rebut the presumption of verity attached to his sworn statements – that he understood the potential penalty for pleading guilty – or the court's official documents, which likewise made clear the possible penalties. Thus there is no basis for this Court to find that Newman believed that the plea agreement limited his sentence to five years in prison, or that he would have pleaded not guilty if he had fully understood the range of possible punishments. So the Court should reject his argument that his plea was unknowing on that basis.

The record also belies Newman's claim that his family "coerced" him into pleading guilty. The record reveals that Newman's family was concerned that he faced a mandatory-minimum sentence of 25 years in prison if he proceeded to trial, and that the State had strong evidence that would easily prove Newman's guilt beyond a reasonable doubt at trial. *See* Dkt. No. 11-1 at 47; *see also id.* at 48 ("[The State] has got more evidence against you than you will ever know, and all you got to do is take the 5 to 99 slow plea."). But his family members never threatened him, made him illusory promises about the sentencing range, or attempted to overcome his will and force him to plead guilty. Moreover, though the trial court thanked Newman's family for their concern, the court admonished Newman that the choice of whether to plead guilty was his – and his alone. *See id.* 49 ("I know that your family members have asked you to do something, but, ultimately, Mr. Newman, it's up to you. So you decide because it's you that has the right to a jury trial."). After this admonishment, Newman pleaded

guilty.

On this record, the Court should reject Newman's allegations that his plea was unknowing and involuntary.

Newman also makes a passing reference to the "7 to 8 different types of medication" that he was taking during his plea proceedings. Dkt. No. 3 at 7. To the extent that Newman is alleging that the medication rendered him incompetent to plead guilty, the Court should reject his claim for at least two reasons. First, his allegation is bald and conclusory. Newman does not identify what medications he was taking, explain how those medications affected his decision making, or draw any link between taking medication and his decision to plead guilty. His conclusory allegation – that he was taking seven to eight medications – does not warrant federal habeas relief. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).

Second, Newman swore during his plea proceedings that he was competent to plead guilty and signed a plea agreement, averring that he was competent to plead guilty. *See* Dkt. No. 11-1 at 32. Those sworn statements are entitled to the presumption of truth, *Blackledge*, 431 U.S. at 73-74, and he has failed to rebut that presumption. Moreover, Newman's lawyer averred – both in the plea paperwork and to the trial court during the plea colloquy – that he believed Newman to be competent. *See id.* at 34; *see also id.* at 52 (affirming that Newman was competent to proceed). Therefore, to the extent that Newman is claiming that his plea was involuntary because he was taking medication, his claim must fail.

Newman also claims that his trial counsel was ineffective for failing to protect

Newman's constitutional rights throughout the plea process. Specifically, Newman attacks the validity of his plea on the ground that his trial counsel coerced him into pleading guilty and failed to obtain his medical records, which Newman alleges would have shown his incompetence.

But Newman never presented those claims to the state courts. *See* Dkt. No. 11-1 at 8. Because the factual and legal bases for these attacks on his guilty plea were never fairly presented to the state courts, these claims are unexhausted. *See Campbell v. Dretke*, 117 F. App'x 946, 957 (5th Cir. 2004) ("'The exhaustion requirement is satisfied when the substance of the habeas claim has been fairly presented to the highest state court' so that a state court has had a 'fair opportunity to apply controlling legal principles to the facts bearing on the petitioner's constitutional claim.'") (quoting *Soffar v. Dretke*, 368 F.3d 441, 465 (5th Cir. 2004); *see also* 28 U.S.C. § 2254(b)(1)(A). The exhaustion doctrine "demands more than allusions in state court to facts or legal issues that might be comprehended within a later federal habeas petition." *Nickelson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015).

Moreover, Newman is procedurally barred from obtaining federal habeas relief on these claims. Unexhausted claims are deemed procedurally barred if "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Texas law precludes successive habeas claims except in narrow circumstances. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5. This is a codification of the judicially

created Texas abuse-of-the-writ doctrine. *See Barrientes v. Johnson*, 221 F.3d 741, 759 n.10 (5th Cir. 2000). Under this state law, a habeas petitioner is procedurally barred from returning to the Texas courts to exhaust his claims unless the petitioner presents a factual or legal basis for a claim that was previously unavailable or shows that, but for a violation of the United States Constitution, no rational juror would have found for the State. *See id.* at 758 n.9. Therefore, unexhausted claims that could not make the showing required by this state law would be considered procedurally barred from review on the merits in this Court unless an exception is shown. *See Beazley v. Johnson*, 242 F.3d 248, 264 (5th Cir. 2001).

An exception to this bar allows federal habeas review if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

The unexhausted claims presented in this Section 2254 petition are procedurally barred, because Newman has not shown that these claims would be allowed in a subsequent habeas proceeding in state court under Texas law. Nor has he asserted the "fundamental miscarriage of justice" exception to procedural bar.

In sum, the Court should reject Newman's claims that he did not knowingly and voluntarily plead guilty.

Because Newman entered a knowing and voluntary plea, his nonjurisdictional challenges to his conviction are waived. *See, e.g., Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983) ("Once a plea of guilty has been entered, nonjurisdictional

challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained." (citing *McMann v. Richardson*, 397 U.S. 759 (1970); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Oct. 1981))). Specifically, Newman has waived his claims that the Judge treated him unfairly and acted "rude" by "screaming" and "shouting" at him, displayed "improper mannerisms" and made "improper remarks," ignored his pre-plea motions, was hostile towards his trial lawyer at the plea stage, and exhibited bias by refusing to conduct a competency hearing. *See* Dkt. No. 3 at 12-14. He also waived his claim that the prosecutor was vindictive for enhancing his sentence for a ten-year old conviction. *See* Dkt. No. 3 at 18. And Newman has waived his claims that his lawyer provided ineffective assistance by agreeing with the prosecution and the trial court, thus creating a conflict of interest, and by failing to 1) meet with Newman more often before trial, 2) investigate his case and interview witnesses, 3) pursue a mistaken identity theory, 4) solicit an expert in forensic evidence or ballistics, and 5) further investigate Newman's competency before he pleaded guilty.

II.    <u>Challenges to the Sentencing Proceedings</u>

Newman claims that his counsel was ineffective at sentencing for picking jurors who had suffered family violence, making a poor closing argument, for failing to object to the evidence of Newman's history of family violence or the use of fingerprint evidence, and for failing to consult with a mitigation specialist.

Of these claims, Newman only exhausted his claim that his counsel was ineffective during the voir dire of his sentencing jury. *See* Dkt. No. 11-1 at 8 ("My

lawyer also while picking the jury asked [about prior family violence] … my jury consisted of only 3 men and the rest abused women"). Newman's other challenges to his counsel's performance at sentencing are unexhausted. *Compare id.*, *with* Dkt. No. 3 at 6, 20-24. And, as set out above, Newman cannot now return to state court to exhaust those claims. Therefore, those claims are procedurally barred, and Newman is not entitled to relief on them here.

The Court reviews Sixth Amendment claims concerning the alleged ineffective assistance of counsel ("IAC") under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a habeas petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see* 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ____, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed … by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The petitioner also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

[B]ecause of the risk that hindsight bias will cloud a court's review of

-14-

> counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover,"[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105).

To demonstrate prejudice, a habeas petitioner "must show that there is a

-15-

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case." *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

Newman asserts that his jury was composed of jurors who had suffered abuse at the hands of their family, and so he reasons that his counsel was ineffective during voir dire. *See* Dkt. No. 3 at 22 (alleging that his lawyer "and the prosecutors picked these women who said they had" been victims of family violence). But his factual allegation – that his lawyer filled the jury with domestic abuse victims – is plainly refuted by the record. The undersigned has reviewed the record from the voir dire, *see* Dkt. No. 11-1 at 56-58. The record shows that none of the members of the venire who had experienced family violence were seated as jurors for Newman's sentencing trial. Because there is no merit to Newman's claim that his lawyer and the prosecutor "picked these women" who had suffered family violence to be members of his jury, the

Court should reject his only unexhausted claim of ineffective assistance of counsel.

Newman also claims that the prosecutors infected his sentencing proceedings through repeated misconduct. He claims that the prosecutors introduced irrelevant evidence of fingerprints, which he claims did not come from him; discussed evidence that was not admitted and made other prejudicial remarks during their closing argument; improperly introduced evidence of a razorblade; and, during voir dire, replaced three fair-minded jurors with jurors who were more likely to rule against him and conspired with defense counsel to empanel a jury of domestic violence victims. *See* Dkt. No. 3 at 18-19.

All of these claims, however, are unexhausted as Newman failed to present them to the state courts. His untimely direct appeal – which was dismissed for want of jurisdiction – did not mention these claims. Newman also omitted these claims from his state habeas application. Instead, he argued there – under the heading labeled "Prosecutorial Vindictiveness" – that the prosecutors sought to charge him with burglary when the facts showed that he was innocent. *See* Dkt. No. 11-1 at 15-17.

Because Newman did not exhaust the claims of prosecutorial misconduct that he presents here, and because he cannot now return to state court to exhaust them, they are defaulted. So Newman is entitled to no relief on his claims that the prosecutors violated his rights at sentencing.

Newman also claims the trial judge was biased against him at sentencing, arguing that she "instructed the jurors to consider past crimes in terms to say that [Newman had] committed" those crimes, forced him to choose between his right to

counsel and his right to testify in his own defense, and admitted evidence of a razorblade at sentencing.

Newman failed to present the first two claims – that the court improperly instructed the jury and forced him into what he calls a "Hobson's choice" between his rights to counsel and to testify in his own defense – to the state courts. And, for the reasons given above, those claims are defaulted. So Newman cannot prevail on them here.

Moreover, there is no merit to Newman's exhausted claim that the trial judge exhibited judicial bias by admitting into evidence a razorblade that was recovered from the victim's apartment at sentencing.

"Bias is a difficult claim to sustain under AEDPA." *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008). That is because the Supreme Court's case law on bias has "acknowledge[d] that what degree or kind of interest is sufficient to disqualify a judge from sitting 'cannot be defined with precision.'" *Aetna Life Ins. Co. V. Lavoie*, 475 U.S. 813, 822 (1986) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). "Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias." *Buntion*, 524 F.3d at 672.

The United States Court of Appeals for the Fifth Circuit has summarized the three situations in which the Supreme Court has found presumptive bias as: (1) the judge has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) the judge has been the target of personal abuse or criticism from the party; or

-18-

(3) the judge has the dual role of investigating and adjudicating disputes and complaints. *See id.* (discussing *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir. 2005)).

Newman does not claim that trial judge was biased under this framework. Instead, he argues that the trial judge was biased in making an evidentiary ruling, "admitt[ing] a razorblade to be exact that no one even knew about." Dkt. No. 3 at 14. But that allegation comes nowhere close to the required showing for actual bias. *Cf. Buntion*, 524 F.3d at 672-73. Indeed, Newman cannot even show that the trial court's evidentiary ruling was error in the first instance.

The Texas Code of Criminal Procedure provides that – at sentencing – the prosecution may introduce the circumstances of the offense for which the defendant is being tried. TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). Evidence of the razorblade – which the State contended that Newman carried with him as he burglarized the victims' apartment – was a circumstance of his burglary. Thus the trial court did not exhibit bias in correctly ruling otherwise.

The Court should, therefore, deny Newman's claims that the trial judge was biased against him at the sentencing proceeding.

Newman next claims that his rights to due process were violated at sentencing when evidence of his "mental state was not presented" and when the court made him participate in the sentencing proceeding when his "competence [was] reasonably in question." But Newman defaulted these claims by failing to present them to the state courts. *Cf.* Dkt. No. 11-1 at 13 (arguing, in his state writ application, that his due process rights were violated because the complaining witness and the detective were

both Hispanic, and that the complainant had fabricated his police report to cover for his own illegality). Thus, those claims cannot now form the basis for federal habeas relief.

Even if Newman had exhausted his claim that the trial court should have further investigated his competency before allowing the sentencing proceeding to go forward, he still would be entitled to no relief.

Undoubtedly, "[t]he conviction of a legally incompetent defendant violates constitutional due process." *Albana v. Director*, No. No. 6:06cv407, 2007 WL 788330, at *3 (E.D. Tex. Mar. 14, 2007) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000)). And "[a] defendant has a procedural due process right to a competency hearing when the evidence raises a bona fide doubt as to the defendant's competence at the time of trial and any immediately related proceedings." *Lashawn v. Stephens*, No. A-12-CA-623-SS, 2013 WL 4833850, at *4 (W.D. Tex. Sept. 9, 2013) (citing *Pate*, 383 U.S. at 385; *McInerney v. Puckett*, 919 F.2d 350, 351 (5th Cir. 1990)); *see also, e.g., Albana*, 2007 WL 788330, at *3 ("A state court must conduct an inquiry into the defendant's mental capacity *sua sponte* if the evidence raises a bona fide doubt as to competency." (citing *Mata*, 210 F.3d at 329)).

"Three factors should be considered when determining whether a 'bona fide doubt' exists: the existence of any history of irrational behavior, defendant's demeanor at trial, and prior medical opinion." *Lashawn*, 2013 WL 4833850, at *4 (citing *Chenault v. Stynchcombe*, 546 F.2d 1191, 1193 (5th Cir. 1977); *Mata*, 210 F.3d at 329).

The state court's denial of this ground is neither unreasonable in light of the

evidence nor contrary to clearly established federal law, as Newman has offered no evidence that raises a bona fide doubt as to whether, during his sentencing proceedings, he had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he [had] a rational as well as factual understanding of the proceedings against him," *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam), the established test of incompetency, *see, e.g., Albana*, 2007 WL 788330, at *3. Indeed, the only record evidence undermines Newman's claim that the trial court should have inquired further into his competency. At his plea proceedings, Newman's counsel averred to the court that Newman was competent. Counsel's appraisal comported with the trial court's view of Newman's behavior, and, more critically, with the State's competency evaluation, which showed that Newman was competent to proceed. Thus there is no basis to conclude that the trial court violated Newman's rights at sentencing.

Finally, Newman claims that his rights to due process were violated when two witnesses – who testified that they had never met him before the night that he broke into their apartment – were allowed to testify at his sentencing. Dkt. No. 3 at 16. Newman states that "the two witnesses under oath said they had never [seen] me before," and he notes that Black's Law Dictionary defines witness as "one who can place another at the scene of a crime." *Id.*

This claim is meritless. The witnesses that Newman references were victims who were at the apartment when he broke into it. One witness testified that she heard someone smash the window in her apartment, which made her scared. *See* Dkt. No. 13

at 295. The second witness – the sister of the first witness – also testified that she and her sister were watching television when she heard the window in her brother's room being smashed in. *See id.* at 298-300. She testified that the noise scared her, and that she felt scared upon realizing that Newman was breaking into her apartment. *See id.* at 300. Setting aside his illogical claim that these two victims were not witnesses because they only heard, but did not see, Newman breaking in, he has offered no explanation as to how their testimony violated his right to due process. Therefore, the Court should reject Newman's claim that his due process rights were violated at his sentencing proceeding.

### Recommendation

The Court should deny the application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 27, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE